UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN ALLAN SHAWLEY          :
                              :
          Plaintiff           :     No. 4:CV-04-1189
                              :
     vs.                      :     Removal Petition Filed 6/02/04
                              :
CLINTON COUNTY, et al.,       :     (Judge Muir)
                              :
          Defendants          :

**ORDER**

April 21, 2006

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On April 21, 2004, Plaintiff Steven Allen Shawley initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 in the Court of Common Pleas of Clinton County. The Defendants named in the original complaint were the Clinton County Board of Commissioners, Thomas Duran, Jacki Motter, David Immel, Charles Ridlin, Lt. Bechdel, C.O. Miller, Lt. Kathryn Blackburn, Kevin McCool, and Terry Garner.  On June 2, 2004, those Defendants removed the matter to this court.

On August 19, 2004, we issued an order in which we granted a motion to dismiss all of Shawley's state law claims and all of his claims against the Clinton County Board of Commissioners.  On November 4, 2004, Shawley filed a motion for leave to file an amended complaint in which he sought to add Clinton County as a

party.  By order dated November 30, 2004, we granted the motion.[1]
The order of November 30, 2004, also established deadlines for
discovery and the filing of dispositive motions, and placed the
case on our June, 2005, Trial List.

After granting a number of motions filed by Shawley to
continue the trial, on January 18, 2006, we issued an order in
which we allowed the parties until February 15, 2006, to file
summary judgment motions.  We provided the extension after
recognizing that various discovery disputes remained pending when
the initial period for filing dispositive motions had expired.

On February 3, 2006, the Defendants filed a motion for
summary judgment, a supporting brief, and a statement of facts.
After receiving an extension of time in which to do so, on April
5, 2006, Shawley filed an opposition brief, a counter-statement
of facts, and two declarations with supporting exhibits.  The
Defendants timely filed their reply brief on April 13, 2006,
thereby ripening their motion for summary judgment for
disposition.

Summary judgment is appropriate only when there is no
genuine issue of material fact which is unresolved and the moving
party is entitled to a judgment as a matter of law. Fed. R. Civ.
P. 56©.  Summary judgment should not be granted when there is a
disagreement about the facts or the proper inferences which a

---

[1]Shawley filed his amended complaint on January 10, 2005.

2

fact-finder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of its case that a reasonable jury could find in its favor. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986).

When addressing a motion for such a judgment, our inquiry focuses on "whether <u>the evidence</u> presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(emphasis added). As summarized by the Advisory Committee On Civil Rules, "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee note to 1963 Amendment.

3

The Defendants contend that they are summarily entitled to judgment as to all of the claims in Shawley's amended complaint because Shawley has failed to support numerous essential allegations with any evidence of record.  As noted above, in such instances the burden shifts to Shawley to come forward with sufficient evidence of record to establish that a reasonable jury could find in his favor on one or more of his claims.

Although Shawley's amended complaint contains eight counts, only three distinct claims are raised in the amended complaint. The claims asserted therein are summarized in the first paragraph of that document, which is entitled "Preliminary Statement."  In that paragraph Shawley states the following:

> This is a civil rights action filed by Steven A. Shawley, a pre-trial detainee for damages, declaratory and injunctive relief under 42 U.S.C. § 1983, alleging conspiracy and retaliation in connection with access to courts, inmate assault, due process of law, disciplinary proceedings ... (confinement in segregation) in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution.

(Amended Complaint, p. 1)

We initially consider Shawley's access to courts claim.  He contends that, while incarcerated for unrelated convictions at the Clinton County Correctional Facility, he was not provided with adequate legal research materials in connection with 1) state criminal charges filed against him in the Court of Common Pleas of Centre County, and 2) a habeas corpus petition filed by Shawley in the Court of Common Pleas of Clinton County in which

he sought access to legal materials in order to defend himself on the criminal charges filed against him in the Court of Common Pleas of Centre County.

It is undisputed that Shawley was initially convicted of the charges filed in the Court of Common Pleas of Centre County but Shawley successfully appealed the convictions and they have been overturned. Although it is possible that Shawley may face another trial in connection with those charges, he is not currently incarcerated because of them. The parties further agree that Shawley's habeas corpus petition was denied. In the order denying Shawley's petition, the judge considered the merits of Shawley's claims and concluded that he was "unable to find a constitutional violation." (Document 113, Exhibit G, p. 2)

The Court of Appeals for the Third Circuit has stated that in order to prevail on an access to courts claim, an inmate plaintiff is required to have suffered an "actual injury, such as the loss or rejection of a legal claim." Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997). The United States Supreme Court has held that in order to fulfill this prerequisite, the plaintiff

> must ... demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement [of] which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts,

but was so stymied by inadequacies of the law library that
he was unable even to file a complaint.

Lewis v. Casey,  518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996).

The Defendants contend that they are entitled to summary
judgment on Shawley's access to courts claim because no evidence
of record indicates that he has suffered any actual injury.  The
only legal proceedings at issue are the state criminal charges in
the Court of Common Pleas of Centre County and Shawley's habeas
corpus petition which was denied in the Court of Common Pleas of
Clinton County.

As noted above, Shawley successfully appealed his
convictions in the criminal case.  Our review of the judge's
order denying Shawley's habeas petition has failed to reveal any
decision in that case adverse to Shawley which may be attributed
to Shawley's inability to present or proceed with a claim.
Shawley has completely failed to present any evidence indicating
that he suffered an adverse decision (i.e., an actual injury) in
either of the underlying legal matters discussed in his complaint
as a result of an inadequate law library or research materials.
We will grant the Defendants' motion for summary judgment as to
Shawley's access to courts claim.

Shawley's remaining two claims are that, in retaliation for
Shawley filing the habeas corpus petition discussed above, the
Defendants conspired to 1) cause Shawley to be assaulted by
another inmate named Mark Alonzo Williams, and 2) find Shawley

6

guilty of, and punish him for, a false misconduct charge based on the altercation with Williams.

We first consider Shawley's claim that his Eighth Amendment right to be free from cruel and unusual punishment was violated as a result of the Defendants' conspiracy to allow Inmate Williams to assault him.  The Court of Appeals for the Third Circuit has held that

> [f]or an inmate to prevail on an Eighth Amendment failure-to-protect claim, two requirements must be met. First, the prisoner must demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834, 114 S.Ct. at 1977. This element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.*  Second, the prison officials involved must have a sufficiently culpable state of mind. *Id.* at 838, 114 S.Ct. at 1979 ("[O]ur cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.").  Specifically, the inmate must show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*
> Consequently, to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir.1993).

Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997).  Our consideration of whether those elements exist in this case requires further identification of the named Defendants and additional discussion of the undisputed material facts.

The named Defendants are Clinton County, Thomas Duran, David

Immel, Jacki Motter, Charles Ridlin, Lieutenant Bechdel, Lieutenant Kathryn Blackburn, Corrections Officer Miller, Kevin McCool, and Terry Garner. Each individual defendant is an official or employee at either the Centre County Prison or the Clinton County Correctional Facility.

Bechdel and Miller are corrections officers at the Clinton County Correctional facility. Duran is the Warden at the Clinton County Correctional Facility. Motter is the Deputy Warden at the Clinton County Correctional Facility.

Terry Garner and Kevin McCool are corrections officers at the Centre County Prison. Lieutenant Blackburn is responsible for conducting disciplinary hearings at the Centre County Prison. Immel is the Warden at the Centre County Prison. Ridlin was the Deputy Warden at the Centre County Prison.

Although Shawley was considered to have been a Centre County prisoner, he was periodically housed at the Clinton County Correctional facility under the terms of an inter-county agreement between Clinton County and Centre County. While the criminal charges against Shawley were being prosecuted in the Court of Common Pleas of Centre County, Shawley was shuttled back and forth between the Clinton County Correctional Facility and the Centre County Jail. Those transfers were to allow Shawley to use the Centre County Correctional Facility Library because he was representing himself, with standby counsel, in the criminal

case.  The practice of transferring Shawley for that purpose was
one of the reasons cited by Judge Williamson in his order denying
the habeas corpus petition discussed above.

On February 8, 2003, Shawley and Inmate Williams yelled at
each other.  The written report documenting that incident states
that a corrections officer informed "the two inmates [that] if
[he] had to keep them apart one would have to go to [the
Restricted Housing Unit]." (Shawley's Declaration #2, Exhibit A)

A few days before May 7, 2003, Shawley had been transferred
to Centre County Prison to provide him better access to legal
materials relative to the pending criminal matters.  On May 7,
2003, Shawley was transported back to the Clinton County
Correctional Facility.  When he arrived there he was placed
temporarily in a reception holding area.  Another inmate, Mark
Alonzo Williams was in the same general area.  When Williams saw
Shawley, Williams made threatening gestures to Shawley.  When
Shawley entered the reception holding area a fight broke out
between Williams and Shawley.  The incident lasted less than one
minute and it was broken up by corrections personnel.

Those are the undisputed material facts pertaining to
Shawley's second and third claims.  Shawley contends that the
Defendants' summary judgment motion with respect to his second
and third claims should be denied because of additional facts
which he discusses in the second declaration he filed in

9

opposition to the Defendants' summary judgment motion.   The

relevant allegations in that document are as follows:

11.   On 4/02/03, I and inmate Dorbolo filed a [petition for]
writ of habeas corpus for denial of access to courts in
Clinton County against defendants Duran and Motter.

12. ... I had a hearing on 4-06-03, [and] on 4/14/03, which
was rescheduled for 5/02/03, and [the] Clinton County [Board
of Commissioner's, and] Duran and Motter were present.

13. ... After my hearing Judge Williamson ordered it
continued ... from 5/02/03 to 5/08/03 and ordered Defendant
Immel to appear or a subpoena issued by the court.

14.   On May 2, [20]03, I was temporarily transfered [sic]
back to Centre Co. Prison by Defendants Clinton Co. Bd. Of
Comr's, Immel, Ridlin, Duran and Motter and I was housed on
G-[Block] at Clinton County when I left.

15.   When I arrived at Centre Co. Prison, Defendants Immel
and Ridlin told me I better watch myself.   They didn't like
people who take them to court.

16.   On 5/7/03, Defendants Immel and Ridlin told me to get
my belonging [sic] [because] I was going back to Clinton
County.

17.   As I was leaving Defendants Immel and Ridlin told me
that I was in for a surprise and laughed.

18. ... I arrived at Clinton County I seen [sic] Williams
standing at the door on the classification block.

19. ... I told Defendant Miller who was on duty checking me,
[and other inmates in the area] that I was separated from
Williams and would be assaulted.

20.   Defendant Miller told me he had orders from Defendants
Bechdel, Duran, and Motter [that] I was to be placed on the
classification block.

21. ... Inmate Yearick also told Defendant Miller I was
separated from Williams and there would be trouble if he put
me on the block with Williams.

22. ... Defendant Miller ordered me to go on the block at which time I again told him I would be assaulted and he had the door opened and ordered me into the block and walked away as the door was closing behind me.

23. After the door closed Williams started striking and kicking me in the face and body with his fists and feet knocking me to the floor.

24. Defendants Miller and Bechdel then locked me down and issued false disciplinary charges against me in retaliation for filing [my habeas corpus petition].

(Declaration Number 2, pp. 3-4)  Shawley has made those

assertions "under penalty of perjury," and we will accept the

factual components of them, but not the legal conclusions stated

therein, as having been presented in an affidavit.

The only other significant facts to consider are contained

in a document which Shawley submitted in opposition to the

pending summary judgment motion.  The document at issue is

entitled "Clinton County Correctional Facility Extraordinary

Occurrence Report" and Shawley filed it as an exhibit to his

"Declaration #2."  The document is a written report regarding the

fight between Shawley and Williams on May 7, 2003.  A portion of

the document was filled out by Corrections Officer Joseph M.

Serafini at the Clinton County Correctional Facility.  Serafini

states in the report that

... Inmate Steven Shawley and Inmate Williams ... were standing toe to toe in classification.  Officer Miller and myself were going in to breake [sic] the two up when Inmate Shawley swung with a closed fist at Inmate Williams striking him in the face.  Inmate Shawley tackled Inmate Williams onto the bunk by the door.  Officer Miller pulled Shawley off of Williams and I pulled Williams out of classification

11

and restained [sic] him on the ground.  Inmate Williams told
me several times that there was a keep separate between the
two.  I checked the computer for any keep separates and
found nothing.

(Declaration #2, Exhibit C-1)

We will apply the facts set forth above to the legal
standard governing Shawley's claim that the Defendants violated
his Eighth Amendment rights by allowing him to be assaulted by
Inmate Williams.  Our analysis will focus on whether any evidence
of record shows that any Defendant knew of and disregarded "an
excessive risk to [Shawley's] health or safety; the official must
both [have been] aware of facts from which the inference could
[have been] drawn that a substantial risk of serious harm exists,
and he must also [have drawn] the inference." Hamilton v. Leavy,
117 F.3d 742, 746 (3d Cir. 1997)(quoting Farmer v. Brennan, 511
U.S. 825, 838, 114 S.Ct. 1970, 1979 (1994)).

Shawley's declaration establishes that Defendants Immel and
Ridlin made comments which could be construed as threats, and
that Defendant Miller ordered Shawley to enter an area where
inmate Williams was standing.  However, it is critical to note
that Defendants Immel and Ridlin are affiliated with the Centre
County Prison, while Miller is a corrections officer at the
Clinton County Correctional Facility.  When Miller required
Shawley to enter the area occupied by Williams, Miller stated
that he was following orders that had been issued by Bechdel,
Duran and Motter.  Those three Defendants are employed at the

12

Clinton County Correctional Facility.

Shawley has presented no evidence that any Defendant connected with the Centre County Prison had any inappropriate contact or communication with one or more of the Defendants associated with the Clinton County Correctional Facility. Such a connection, based on evidence of record, would be necessary for a reasonable finder of fact to conclude that the conspiracy alleged in Shawley's amended complaint actually existed. In the absence of such evidence, there is no basis to conclude that any Defendant connected with the Centre County Prison had any role in the events underlying Shawley's second and third claims. Those Defendants are entitled to summary judgment as to those claims.

We next consider whether Shawley's assertions create any material factual disputes with respect to Defendants Miller, Bechdel, Duran and Motter. The evidence of record establishes that on May 7, 2003, when Shawley fought with Williams, Shawley was periodically transferred back and forth between the Clinton County Correctional Facility and the Centre County Prison. Before that date Shawley and Williams had been involved in one incident in which they yelled at each other.

The fight on May 7, 2003, occurred immediately upon Shawley's arrival at the Clinton County Correctional Facility. Although Williamson and Shawley told corrections officers immediately before the fight that the two inmates were to be kept

13

apart, the records of the Clinton County Correctional Facility did not reveal that any formal "keep separate" order regarding the two inmates had been previously entered.  In addition, although Defendant Miller may have walked away from Shawley immediately before the fight, the evidence demonstrates that other inmates and at least one other Corrections Officer (Serafini) were in the immediate area.  Miller did not leave Shawley alone with Williams.

Prior to the incident in question on May 7, 2003, Williams and Shawley only had one fight, which consisted of yelling and no physical violence.  As a result they were told that if they had to be separated one of them would go to the Restricted Housing Unit.  There is no evidence that a formal "keep separate" order had been issued.  Consequently, there is no evidence establishing that the Defendants knew, or had any reason to believe, that Shawley and Williams should have been kept separate from each other.

While Shawley's statements to Miller immediately before the incident are relevant, they are not sufficient to establish that Miller should have known of any substantial risk of serious harm to Shawley.  Moreover, Miller's statement that he was following orders issued by other Defendants when he required Shawley to enter the area occupied by Williams is not sufficient to create any factual dispute concerning Defendant Miller's culpability.

His statement is entirely consistent with the orderly operation of a prison.  In addition, it is not surprising that special orders may have been issued concerning Shawley in the light of his frequent transfers to and from the Centre County Prison.

In the absence of any other evidence establishing a culpable state of mind of any other Defendant, Miller's statements do not raise enough of an inference for a reasonable finder of fact to rule in favor of Shawley on his Eighth Amendment claim.  In other words, no reasonable finder of fact could conclude that Defendant Miller, or any other Defendant, was aware of a substantial risk of serious harm to Shawley if Shawley and Williams were in the same room.  The Defendants associated with the Clinton County Correctional Facility are entitled to summary judgment with respect to Shawley's Eighth Amendment claim.  Based on the evidence of record, we are of the view that no reasonable finder of fact could conclude that any Defendant acted with a sufficiently culpable state of mind with respect to the fight between Shawley and Williams.

The sole remaining claim to consider is that the Defendants fabricated misconduct charges against Shawley arising from the fight with Williams in retaliation for various protected actions taken by Shawley, including his filing the habeas corpus petition.  Shawley describes this claim as follows in his amended complaint:

15

The Defendants Duran, Motter, Immel, Ridlin, Bechdel,
Miller, Blackburn, Garner, and McCool deprived Plaintiff of
his Fourteenth Amendment right[s] ... when they
conspiratorily [sic] planned Plaintiff's disciplinary
proceedings in retaliation for filing grievances and civil
actions by having him assaulted, issuing false misconduct
reports and charges, failure to call witnesses, no evidence
to support the charges and sentencing him to thirty-five
days in segregation.

(Amended Complaint, p. 13, ¶62)

The portion of the claim based on a conspiracy to allow

Shawley to be assaulted has already been addressed.  Shawley has

not presented sufficient evidence to survive the Defendants'

summary judgment motion as to that portion of his claim.  The

remaining portions of the claim are based on the alleged

insufficiency of the evidence and the failure to allow Shawley to

call his witnesses.

In Wolff v. McDonnell, 418 U.S. 539, 563-573 (1974) the

inmate plaintiffs were deprived of good time credits after having

been found guilty of serious misconduct.  The Supreme Court held

that inmates have various procedural due process protections in a

prison disciplinary proceeding, including the right to call

witnesses and to appear before an impartial decision-maker.  The

Supreme Court set forth five requirements of due process in a

prison disciplinary proceeding: (1) the right to appear before an

impartial decision-making body; (2) twenty-four hour advance

written notice of the charges; (3) an opportunity to call

witnesses and present documentary evidence, provided the

16

presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.

An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Institution at Walpole v. Hill, 472 U.S. 445, 453-456 (1985). In Hill, the court held that the record must contain some evidence which supports the conclusion of the disciplinary tribunal.

Shawley's most significant allegation is that he was denied the right to call witnesses. The evidence of record indicates that Shawley identified two witnesses whom he wished to have appear at his hearing. The hearing examiner contacted those witnesses by telephone and received their testimony in that fashion. Shawley contends that the procedure was constitutionally flawed because he was denied the right to cross-examine the witnesses. The relevant cases do not identify cross-examination as a right which must be provided in the context of prison disciplinary proceedings. In fact, the right to call witnesses is qualified by the provision that the presentation of witnesses should not threaten institutional safety or correctional goals. We also note that Shawley has not detailed

17

what additional information would have been placed into the record if he had been given the opportunity to cross-examine his own witnesses.

We are of the view that the procedure employed in Shawley's disciplinary proceedings comply with the requirements set forth in Wolff and Hill, including the existence of some evidence to find Shawley guilty of the misconduct charge.  Shawley has failed to present any evidence of record to support his contention that a conspiracy led to the filing of the disciplinary charges or affected the outcome of those proceedings.  The Defendants are entitled to summary judgment on Shawley's claim relating to those proceedings.

We will grant the Defendants' motion for summary judgment.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.  The Defendants motion for summary judgment (Document 103) is granted.

2.  The Clerk of Court shall enter judgment in favor of the Defendants on all of Shawley's claims.

3.  The Clerk of Court shall close this case.

4.  Any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

MUIR, U. S. District Judge

MM:ga

18